**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
RONNIE P. ELAM,                )
                               )
        Plaintiff,             )
                               )
    v.                         )
                               )
D.C. FIRE & EMS DEPARTMENT,    )   Civil Action No. 03-1407 (GK)
et al.,                        )
                               )
        Defendants.            )
_____)

**MEMORANDUM OPINION**

Plaintiff, Ronnie P. Elam, brings this suit alleging employment discrimination on the basis of sex and age in violation of Title VII, 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.. Defendants are the D.C. Fire and EMS Department ("the Department") and the District of Columbia ("Defendants"). This matter is before the Court on Defendants' Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendants' Motion for Summary Judgment is **denied in part** and **granted in part**.

**I. BACKGROUND**[1]

   **A. Facts**

Plaintiff began working as a firefighter for the D.C. Fire Department in 1982. In 1993, he was promoted to Inspector, Fire

---

[1] Unless otherwise indicated, the facts set forth herein are from the Defendants' Statement of Undisputed Material Facts. See Local Rule 7.1(h).

Marshall's Office, Fire Prevention Division.  In 1997 he was assigned to the Nuisance and Abatement Task Force ("Task Force"), where he remained until 2001.  At some point thereafter, he became Lead Inspector, which required him to supervise the other Task Force employees.  Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Br."), Ex. 1.  He "received several commendations for his work within the Task Force:  twice received Inspector of the Year, received the Mayor's Merit Award, was nominated for the top city employee of the year, and was recommended for the John R. Gray Distinguished Fire Inspector Award by Sergeant William F. Guffey via a January 9, 1998 Memorandum."  Id. at 4, Exs. 1, 12.[2]

Kimberly Pinkney ("Pinkney") joined the D.C. Fire Department in 1988.  After working for one year as a cadet, she became a firefighter with Engine Company Number 2.  In 2000, Pinkney was promoted to Inspector, Fire Marshall's Office, Fire Prevention Division.  Beginning in 2000, Pinkney also held the Neighborhood Services Program Manager position.

On July 6, 2001, before Pinkney had worked one full year as Inspector, she was promoted to the position of Acting Sergeant-- Neighborhood Services Initiative Liason ("Acting Sergeant") by Deputy Fire Chief Bruce Cowan.  See Pl.'s Br., Ex. 1.  It is this promotion Plaintiff challenges.  The position was not posted, and

---

[2] Plaintiff also received several letters of commendation from his former supervisors and a member of the community. Pl.'s, Br., Exs. 6, 9-11, 13.

Plaintiff did not become aware of the opening until after Pinkney was promoted to it. Defs.' Mot. for Summ. J. at 8 ("Defs.' Br.").

As Acting Sergeant, Pinkney took on additional responsibilities, including the supervision of geographical inspectors and the Task Force, organization of public duty details, and other various tasks. She also continued to perform the duties of the Neighborhood Services Program Manager.

According to Article 38 of the Collective Bargaining Agreement Between Local 36, International Association of Firefighters and DCFD, when an employee has served in an acting capacity "for more than sixty (60) consecutive calendar days [s/he] shall receive the pay for the higher rank beginning the first full pay period performed in the higher-ranked position and continuing until the detail is terminated." Defs.' Br., Ex. 5. In October 2001, Pinkney requested additional compensation for the Acting Sergeant position. One or two months later, she received a salary increase of approximately $3,000. She continued to receive the increased salary for approximately two to three months.

Plaintiff asserts, and Defendants do not dispute, see Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Defs.' Reply") at 7, that Pinkney's promotion to Acting Sergeant was contrary to Defendants' promotion policies, as set forth in Special Order No.

71, Series 2001, and Chapter 8 of the District Personnel Manual.[3] Pl.'s Br., Exs. 4, 5.  On March 18, 2002 Deputy Fire Chief James Miller found that Pinkney, as well as six other employees, were improperly promoted.[4]  Pl.'s Br., Ex. 5; see Def.'s Reply, Ex. 9. Six days later, and about nine months after she was promoted, Pinkney was removed from the Acting Sergeant position and returned to her previous rank and assignment.  Fire Marshal Kenneth B. Ellerbe confirmed the impropriety of Pinkney's promotion in a memorandum dated September 20, 2002:  "[Cowan's] appointment of Fire Inspector Kimberly Pinkney . . . to the position of Acting Sergeant was not according to any established rule, regulation or common practice, [sic] she did not have enough time in the division to qualify as an Acting Sergeant."[5]  Pl.'s Br., Ex. 4.

On June 26, 2003, after having filed a charge of discrimination with the Equal Employment Opportunity Commission, Pl.'s Br., Ex. 3, Plaintiff filed suit in this Court alleging sex

---

[3] Plaintiff's Exhibit 5, a March 18, 2002 letter from Deputy Fire Chief James A. Miller to Brian K. Lee, Grievance Chairman for Local 36, does not refer specifically to Pinkney's promotion, and instead mentions "illegal acting promotions."  However, Defendants did not contest the purpose for which Plaintiff offered this exhibit.

[4] At least one of the employees improperly promoted was a female older than Plaintiff.  Defs.' Reply, Ex. 11.

[5] Pinkney was a "probationary employee," meaning she had not worked long enough in the division to qualify for a promotion to an "acting" position.  Pl.'s Br. at 12; Pl.'s Br., Ex. 1.

and age discrimination with respect to his non-promotion to Acting Sergeant.

**B.  The Parties' Positions**

Defendants moved for summary judgment with respect to both of Plaintiff's claims, asserting that Plaintiff failed to make the requisite prima facie case, and that Defendants had a legitimate, non-discriminatory reason for promoting Pinkney and not Plaintiff. Defs.' Br. at 8-12.  Specifically, Defendants claim that Pinkney was promoted to the Acting Sergeant position because of "her great commitment and knowledge to the Neighborhood Services Program, the great respect she has earned from the Mayor's Office, employees of other agencies and her supervisors, her excellent verbal communication skills, her organizational ability, her teaching ability, her presentation skills, compliments . . . from citizens and city officials and her superior performance as a Fire Inspector."  Id. at 12.  Defendants claim Plaintiff was not promoted because "[he] did not know how to talk to the people upstairs,"[6] and because of "verbal complaints received from Patrick Canavan, Director of Neighborhood Services, his lack of written and verbal communications skills, his inability to get along with some members of the public, and poor record keeping skills." Id. at 12-13.

---

[6] "The people upstairs," refers to the Mayor's staff.  See Pl.'s Br., Ex. 8.

Plaintiff points to the fact that Pinkney's promotion was contrary to established policy and that it was later rescinded. Pl.'s Br., Ex. 4, 5.  He also points out that he had more seniority than Pinkney, that he had experience as Lead Inspector of the Task Force, and that his former supervisors had recognized his work through awards and letters of commendation.  Pl.'s Br. at 4-5, 8-9, Exs. 1,4, 12.

With respect to sex specifically, Plaintiff offers a September 18, 2000 memo[7] written by Bruce Cowan, then-Deputy Fire Chief and decision-maker for the Acting Sergeant position, which states that Pinkney was promoted "because of the duties [she was] already performing, education, professional background and for the benefit of all in the Fire Prevention Division.  Further, although females have been members of the Division for fifteen years, none had ever been in supervisory/officer positions."  Pl.'s Br., Ex. 7.

With respect to age, Plaintiff points to the fact that at the time Pinkney was promoted, he was 44 years old and she was 31 years old.  See Pl.'s Compl. for Damages and Equitable Relief at ¶¶ 22, 25. He also asserts, although with no concrete evidence to support it, that there were "[r]umors going in the department that they wanted younger people."  Defs.' Br. at 13 (quoting Pl.'s Dep. Tr. at 99-100).

---

[7] It appears the memorandum is mis-dated, as Pinkney did not take the Acting Sergeant position until July of 2001.

6

**II. STANDARD OF REVIEW**

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotations omitted). See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor); Crenshaw v. Georgetown Univ., 23 F.Supp.2d 11, 15 (D.D.C. 1998) (noting that "adverse party must do more than simply 'show that there is some metaphysical doubt as to the material facts'"

(quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

**III. ANALYSIS**

    **A.    The Governing Standard Under Title VII**

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "In the absence of direct evidence of discrimination, disparate-treatment claims under Title VII are analyzed under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)." <u>Teneyck v. Omni Shoreham Hotel</u>, 365 F.3d 1139, 1149 (D.C. Cir. 2004). In such cases, "[t]he <u>McDonnell Douglas</u> framework establishes 'an allocation of the burden of production and an order for the

presentation of proof.'" Teneyck, 365 F.3d at 1149 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. "The burden of doing so is "'minimal,'" Coward v. ADT Sec. Sys., Inc., 140 F.3d 271, 273 (D.C. Cir. 1998) (quoting Hicks, 509 U.S. at 506) and "'not onerous.'" Teneyck, 365 F.3d at 1149 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Under Title VII, "[t]o establish a prima facie case of discriminatory non-promotion, the plaintiff generally must show that '(1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone . . . filled the position or the position remained vacant and the employer continued to seek applicants.'" Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (quoting Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000)). This standard is not rigid, and may be altered to fit the facts of a particular case. McDonnell Douglas, 411 U.S. at 802 n.13.

If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason." Teneyck, 365

9

F.3d at 1151 (internal citation omitted). See McDonnell Douglas, 411 U.S. at 802; Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998). "The employer's burden is one of production, not persuasion." Teneyck, 365 F.3d at 1151 (internal citation omitted).

If the employer satisfies this burden, "'the McDonnell Douglas framework -- with its presumptions and burdens -- disappear[s], and the sole remaining issue [i]s discrimination vel non.'" Teneyck, 365 F.3d at 1151 (quoting Reeves, 530 U.S. at 142-43). At this point, "a court reviewing summary judgment looks to whether a reasonable jury could infer intentional discrimination . . . from all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

To defeat summary judgment, "(1) the plaintiff must show both that the reason was false, and that discrimination was the real reason, and (2) it is not enough . . . to dis believe [sic] the employer," Hicks, 509 U.S. at 512 n.4 (internal quotations omitted) (emphasis in original); Aka 156 F.3d at 1289-92. To meet his

burden, the plaintiff "must point to more than just a 'scintilla of evidence' supporting his position." Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting Liberty Lobby, Inc., 477 U.S. at 252). Thus, the plaintiff "retains throughout the 'ultimate burden of persuading the court that [s/he] has been the victim of intentional discrimination.'" Hall v. Giant Food, Inc., 175 F.3d 1074, 1078 (D.C. Cir. 1999) (quoting Burdine, 450 U.S. at 254).

**B.     The Governing Standard Under the ADEA**

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . or otherwise discriminate against any individual [who is at least forty years old] because of such individual's age." 29 U.S.C. § 623(a)(1). In this Circuit, ADEA claims, like Title VII claims, are evaluated under the McDonnell Douglas framework. See Hall, 175 F.3d at 1077. To establish a prima facie case under the ADEA, the plaintiff must establish that s/he: (1) is within the statutorily protected age group; (2) was qualified for the position; (3) was terminated or not selected for the position; and (4) was disadvantaged in favor of a younger person. Id.

**C.     Plaintiff Has Established a Prima Facie Case of Sex and Age Discrimination**

Defendants first argue that Plaintiff has failed to establish a prima facie case of sex and age discrimination. Specifically,

11

Defendants claim that: 1) Plaintiff "did not apply for the position before the 'acting' designation was made"; and 2) Plaintiff has not demonstrated "that he has been subjected to some sort of adverse personnel or employment action." Defs.' Br. at 7-8. Both of Defendants' arguments fail.

First, although a plaintiff in a Title VII or ADEA case must usually show that he applied for a promotion and was rejected, a plaintiff is not required to do so when the position was not posted and the plaintiff did not know the position was open. See Cones, 199 F.3d at 518 (failure to apply for a position where employer never opened the position for competition did not defeat prima facie case of discrimination under Title VII)[8]; Lockridge v. Bd. of Tr., of the Univ. of Arkansas, 315 F.3d 1005, 1011 (8th Cir. 2003) (en banc) (noting that a plaintiff may be excused from actually applying for promotion where "the job opening was not officially posted or advertised and either . . . the plaintiff had no knowledge of the job from other sources until it was filled, or . . . the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application") (internal emphasis omitted); EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990) ("Courts have generally held that

---

[8] Although the plaintiff in Cones did informally express interest in the position, Plaintiff in this case could not express such interest because he was unaware the position was available in the first place.

the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer.")

In the instant case, Defendants concede that the Acting Sergeant position was neither advertised nor posted, and that Plaintiff "did not learn of the Acting Sergeant position until after Inspector Pinkney was assigned to it."  Defs.' Br. at 8. Therefore, Plaintiff need not show that he actually applied for the Acting Sergeant position.

Second, Plaintiff has demonstrated that he was subjected to an adverse employment action.  An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Brown, 199 F.3d at 456.  There can be no question that denial of a promotion, even if it is only to a

13

temporary position, can constitute an adverse employment action.[9] Hunt v. City of Markham, 219 F.3d 649, 654 (7th Cir. 2000).

In this case, the promotion carried an increase in pay as well as additional responsibilities. Moreover, even if the promotion was only temporary, it would have provided Plaintiff increased supervisory duties. See Stewart v. Ashcroft, 352 F.3d 422, 427 (D.C. Cir. 2003) (holding that failure to promote plaintiff to his supervisor's position, which carried the same pay and benefits, was an adverse employment action because the position involved greater supervisory authority). Therefore, Plaintiff suffered an adverse employment action when he did not receive the promotion to Acting Sergeant.

The record evidence establishes that Plaintiff meets the remaining prima facie requirements for sex and age discrimination. He is male and was 44 years old when he was denied the promotion to Acting Sergeant. Pinkney is female and is younger than Plaintiff. Finally, there is nothing to suggest that Plaintiff was not sufficiently qualified for the position, although it is difficult to determine whether either Plaintiff or Pinkney was "qualified,"

---

[9] Defendants quote dicta from Taylor v. FDIC, 132 F.3d 753, 764 (D.C. Cir. 1997) to support their argument that a non-promotion to an acting position cannot constitute an "adverse employment action." However, the Court in Taylor expressly stated that it was not deciding that issue. Id. The Court's decision turned not on the fact that the promotion was temporary, but on the fact that the denial was so "minor" that plaintiff failed to make his prima facie showing of discrimination. Id.

as the job qualifications for the Acting Sergeant position were never posted. At the time of the challenged promotion, Plaintiff had approximately twenty years of experience with the Department; Pinkney had approximately eleven. Pl.'s Br. at 5. Plaintiff had been working as the Lead Inspector on the Task Force, which the Acting Sergeant position supervised; Pinkney had not worked on the Task Force at all. Id. at 8-9. Finally, Plaintiff presented several letters of commendation from his former supervisors and a member of the community.

Based on this evidence, Plaintiff has established a prima facie case for both sex and age discrimination.

### D. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Sex Discrimination Claim

Since Plaintiff has made his required prima facie showing, Defendants must offer a legitimate, nondiscriminatory reason for his non-promotion. See McDonnell Douglas, 411 U.S. at 802; Teneyck, 365 F.3d at 1151; Aka, 156 F.3d at 1288.

As noted above, Defendants claim that Pinkney was promoted to the Acting Sergeant position because of "her great commitment and knowledge to the Neighborhood Services Program, the great respect she has earned from the Mayor's Office, employees of other agencies and her supervisors, her excellent verbal communication skills, her organizational ability, her teaching ability, her presentation skills, compliments [sic] from citizens and city officials and her

15

superior performance as a Fire Inspector." Defs.' Br. at 12. Defendants assert that Plaintiff was not promoted because of verbal complaints made against him and because of the way he interacted with "the people upstairs." Plaintiff rebuts this assertion, arguing that his twenty years of overall experience with the Department, his experience as Lead Inspector on the Task Force, and his work performance, as evidenced by the recognition he received from his former supervisors, show he was qualified for the position. Pl. Br. at 8-9.

To survive summary judgment, the plaintiff must next provide evidence that would permit a reasonable jury to conclude that the defendant made the non-promotion decision for a discriminatory reason. See Hicks, 509 U.S. at 512 n.4; Waterhouse, 298 F.3d at 993. Plaintiff has met this burden with respect to his sex discrimination claim.

As noted above, Plaintiff presented ample evidence to create a material issue of fact as to the credibility and accuracy of Defendants' proffered non-discriminatory reason for promoting Pinkney. Moreover, Plaintiff relies on a memorandum written by Bruce Cowan, the decisionmaker with respect to the promotion in question, explaining why Pinkney was selected. Cowan states that "although females have been members of the Division for fifteen years, none had ever been in supervisory/officer positions." Pl.'s Br., Ex. 7. The language in that memo, pointing out that "females

16

. . . had [n]ever been in supervisory/officer positions," certainly raises an inference that Pinkney was promoted because of her sex.

In conjunction with Plaintiff's prima facie case, this evidence would certainly allow a reasonable jury to find, by a preponderance of the evidence, that Defendants promoted Pinkney because of her sex.

**E.   Defendants Are Entitled to Summary Judgment on Plaintiff's Age Discrimination Claim**

Plaintiff has made a prima facie case of age discrimination and has raised an issue of material fact as to whether Defendants' non-discriminatory reason for denying him the promotion was the true reason. In response to Defendant's explanation regarding his non-promotion, Plaintiff only presents the undisputed fact that he is older than Pinkney, and the following deposition testimony, which reveals he has no solid evidence of age discrimination:

> Q:   What are the facts surrounding why you believe you were discriminated by the District based on age?
> A:   Rumors going in the department that they wanted younger people.
> Q:   When you refer to they, are you talking about the D.C. Fire Department that wanted younger people?
> A:   I don't know exactly how to answer that question.
> Q:   Okay. Do you think it was Chief Cowan that wanted younger people?
> A:   I think that the whole administration.
>  . . .
> Q:   Why do you believe that you weren't allowed to compete because of age?
>  . . .
> A:   From age, again, what -- how I was treated and the rumors that was spread among the department.

17

Defs.' Br. at 13-14 (quoting Pl.'s Dep. Tr. at 99-101). Plaintiff presented no evidence to substantiate the substance of the rumors, the source of the rumors, or the time frame within which he learned of the rumors.  With nothing more than these unsubstantiated claims, Plaintiff has failed to present enough evidence to raise even an inference of discrimination based on age. See Brown, 199 F.3d at 458-59 ("a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment")(internal citations omitted). Consequently, no reasonable jury could find, by a preponderance of the evidence, that Plaintiff was denied the promotion because of his age.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **denied** with respect to Plaintiff's sex discrimination claim, and **granted** with respect to Plaintiff's age discrimination claim.

An Order will issue with this Memorandum Opinion.


July 19, 2005                          /s/
                                GLADYS KESSLER
                                U.S. District Judge

**Copies to: attorneys on record via ECF**